UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BYRON JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>CEVA LOGISTICS, et al.,<br><br>        Defendants. | Case No. 19-CV-07657-LHK<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 20 |

Plaintiff Byron Jackson ("Plaintiff") brings suit against Defendants CEVA LOGISTICS ("CEVA"), RANDSTAD INC. ("Randstad"), and TESLA MOTORS ("Tesla") (collectively, "Defendants") for violations of California's Fair Employment and Housing Act ("FEHA"), intentional infliction of emotional distress, and negligent infliction of emotional distress. Before the Court is Plaintiff's motion to remand. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion to remand.[1]

**I.    BACKGROUND**

---

[1] Plaintiff's motion to remand contains a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion. *See* ECF No. 20 at i-ii. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with a combined limit of 25 pages. *See* Civ. Loc. R. 7-2(b).

1

Case No. 19-CV-07657-LHK
ORDER DENYING MOTION TO REMAND

### A. Factual Background

In February 2018, Plaintiff Byron Jackson, an African American man, was hired by Randstad, a temporary staffing agency that contracts to provide workers to various industries in California. ECF No. 1-1 ("Compl.") ¶¶ 1-2, 28. Randstad contracted with CEVA to provide employees and workers to CEVA. *Id*. ¶ 3. CEVA is a world-wide supply chain management company that designs and implements solutions for freight management and contract logistics. *Id*. CEVA contracted with Randstad for Plaintiff's services at a CEVA "facility located at 1710 Little Orchard, in San Jose, Santa Clara County, California" ("the San Jose Facility"). *Id*. ¶ 3, 28. Plaintiff alleges that the San Jose Facility where he worked was owned, operated, and controlled by CEVA "for the benefit of [Tesla]." *Id*. ¶¶ 4, 6. Plaintiff alleges that Tesla "contracted with [CEVA] and [Randstad], directly or indirectly for the services of Plaintiff . . . at facilities engaged in the manufacture and production of [Tesla] products." *Id*. ¶ 7. Randstad and CEVA are not citizens of California. ECF No. 1 ¶¶ 15, 19 ("Notice of Removal"). Tesla has its principal place of business in California and is therefore considered a citizen of California. *Id*. ¶ 20.

Plaintiff alleges that employees of CEVA "blatantly demonstrated that [] racist behavior would be tolerated at sites on which Randstad contracted to provide employees for [CEVA], and for the benefit of [Tesla]." Compl. ¶¶ 9-12, 26. According to Plaintiff, Randstad, CEVA, and Tesla "have allowed a racially hostile environment to exist on its worksite, without restraint," especially with respect to "African American employees." *Id*. ¶ 25. Plaintiff was constantly harassed and subjected to derogatory epithets, and despite Plaintiff's pleas to his supervisors, who worked for Randstad and CEVA, the harassment continued unabated. *Id*. ¶¶ 30-33. Plaintiff also alleges that he "was exposed to similar treatment from the employees of [Tesla] who worked in the quality inspection area of the facility owned by [CEVA]." *Id*. ¶ 40.

Furthermore, Plaintiff alleges that on November 29, 2018, Plaintiff sustained a work-related injury but was refused an accommodation by Randstad. *Id*. ¶ 44. Plaintiff "believes that [his supervisors] intentionally failed to offer a reasonable accommodation both in response to his complaints regarding the racial harassment and discriminatory treatment, and in response to his

2

request for an accommodation." *Id*.

"Finding the continual onslaught of offensive conduct unbearable, along with the employer [Randstad's] failure to accommodate his workplace injury, Plaintiff . . . could no longer bear the conduct and resigned in January 2019." *Id*. ¶ 39.

**B. Procedural History**

On October 11, 2019, Plaintiff filed suit against Defendants in California Superior Court for the County of Santa Clara. Notice of Removal ¶ 1. The Complaint alleges seven causes of action: (1) discrimination based upon race in violation of California's Fair Employment and Housing Act ("FEHA") against all Defendants, Compl. ¶¶ 52-57; (2) harassment based on race in violation of FEHA against all Defendants, *id*. ¶¶ 58-65; (3) failure to engage in an interactive process in violation of FEHA against Randstad, *id*. ¶¶ 66-70; (4) failure to provide reasonable accommodation in violation of FEHA against Randstad, *id*. ¶¶ 71-75; (5) wrongful constructive termination in violation of public policy and FEHA against Randstad, *id*. ¶¶ 76-80; (6) intentional infliction of emotional distress against all Defendants, *id*. ¶¶ 81-84; and (7) negligent infliction of emotional distress against all Defendants, *id*. ¶¶ 85-90. Plaintiff seeks lost wages, punitive damages, emotional distress damages, and reasonable attorney's fees. *Id*. at 19; *see also id*. ¶¶ 54-56, 62-64.

Plaintiff served the Complaint on all Defendants on October 21, 2019. ECF No. 1 ¶¶ 1-2 ("Notice of Removal"). On November 20, 2019, Defendants filed answers and removed the instant case to this Court. *Id*.

On December 6, 2019, Plaintiff filed a motion to remand. ECF No. 20 ("Mot."). Plaintiff argues that this case must be remanded because (1) Tesla is a proper defendant with respect to Plaintiff's causes of action under FEHA, Mot. at 3-6; and (2) the $75,000 amount in controversy requirement is not satisfied, *id*. at 7-10. On December 20, 2019, Defendants filed an opposition to Plaintiff's motion to remand. ECF No. 21 ("Opp."). On December 27, 2019, Plaintiff filed a reply. ECF No. 28 ("Reply").

Additionally, with their opposition to Plaintiff's motion to remand, Defendants submitted

3

Case No. 19-CV-07657-LHK
ORDER DENYING MOTION TO REMAND

various sworn declarations.  First, Defendants filed a declaration from Doug Evans, CEVA's Director of Logistics, who served as the General Manager of the San Jose Facility where Plaintiff worked during the time at issue in the instant case.  ECF No. 22 ¶ 2 ("Evans Decl.").  Second, Defendants submitted the sworn declaration of Charles Grayson, Tesla's Manager of Production, Warehousing, who worked at the San Jose Facility at the time Plaintiff worked there.  ECF No. 23 ¶¶ 2-3 ("Grayson Decl.").  Third, Defendants submitted a sworn declaration from Christine Woo, who serves as Senior Vice President for Randstad.  ECF No. 26 ¶ 2 ("Woo Decl.").  Plaintiff did not file any sworn declarations in response, nor did Plaintiff rebut or respond to the facts proffered in Defendants' sworn declarations.

Finally, Defendants also filed a request for judicial notice in support of their opposition to Plaintiff's motion to remand.  ECF No. 27 ("RJN").  Defendants ask the Court to take judicial notice of various state court jury verdicts in analogous FEHA actions involving successful hostile work environment lawsuits filed by African American plaintiffs.  *Id*.  Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *see also Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) ("We take judicial notice of . . . state court orders and proceedings." (citing Fed. R. Evid. 201(b), (c))).  Plaintiff does not oppose this request.  Accordingly, the Court GRANTS Defendants' request for judicial notice.

## II.    LEGAL STANDARD

### A. Motion to Remand

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case.  28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").  If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court.  28 U.S.C. § 1447(c).

The party seeking removal bears the burden of establishing federal jurisdiction.  *Provincial*

4

*Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

For federal subject matter jurisdiction to exist, a case must either involve diversity of citizenship between the parties or involve a claim arising under federal law. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 n.2 (9th Cir. 2002). Under 28 U.S.C. § 1332(a)(1), federal courts have diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332. The statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

## III.   DISCUSSION

Under 28 U.S.C. § 1332(a)(1), federal courts have diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332. Plaintiff argues that Defendants fail to demonstrate that either the complete diversity or $75,000 amount in controversy requirement is met. Defendants respond that both requirements are met because (1) Tesla was fraudulently joined in the instant case, and (2) Plaintiff's request for damages and attorney fee awards easily satisfies the $75,000 amount in controversy requirement. The Court begins its analysis with the issue of fraudulent joinder before addressing the amount in controversy.

### A.   Plaintiff Fraudulently Joined Tesla in the Instant Action, and Therefore, the Parties Fulfill the Complete Diversity Requirement for Diversity Jurisdiction

Defendants first argue that the Court has diversity jurisdiction over this case such that subject matter jurisdiction is proper. For the Court to have diversity jurisdiction, complete diversity of parties is required. "[I]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego v. Dow Chem. Co.*,

5

443 F.3d 676, 679 (9th Cir. 2006) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

Defendants acknowledge that Tesla is a citizen of California such that its inclusion in the lawsuit would typically destroy complete diversity. Opp. at 3. Defendants, however, argue that Tesla is not a proper defendant because Tesla was fraudulently joined. *Id*. This argument is crucial because fraudulently joined defendants who destroy diversity do not defeat removal. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

"Fraudulent joinder is a term of art" and does not require a showing of bad faith. *Id.* As this Court has previously explained, "[t]here is a 'general presumption against fraudulent joinder' and the defendant's burden of demonstrating that a joinder is fraudulent is a 'heavy' one." *Beutel v. Wells Fargo Bank N.A.*, 2018 WL 3084660, at *2 (N.D. Cal. Jun. 22, 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)). Joinder is fraudulent only when it is "obvious according to the settled rules of the state that [a plaintiff] has failed to state a claim against [a joined defendant]." *Hunter*, 582 F.3d at 1046.

This standard imposes a very high bar on removing defendants, which "accords with the presumption against removal jurisdiction, under which we strictly construe the removal statute, and reject federal jurisdiction if there is any doubt as to the right of removal in the first instance." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (quotation marks omitted). The Ninth Circuit has repeatedly held that "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id*. at 548 (emphasis in original) (citations and quotation marks omitted). "In the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1063 (C.D. Cal. 2012) (internal quotation marks and citations omitted). Additionally, "[f]raudulent joinder must be proven by clear and convincing evidence."

*Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007).

Specifically, in *Grancare*, the Ninth Circuit held that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id*. In other words, courts should only find that a defendant was fraudulently joined if any deficiency in the complaint cannot possibly be cured by granting the plaintiff leave to amend. *Id*. at 550 ("If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must consider, as it did in this case, whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend.").

Nonetheless, though the bar for establishing fraudulent joinder is high, it is not an impossible one. Typically, in cases where a party has been fraudulently joined, courts "pierc[e] the pleadings and consider[] summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)) (affirming district court's determination that defendant was fraudulently joined); *OpenGov, Inc. v. GTY Tech. Holdings Inc.*, 2019 WL 978769, at *6 (N.D. Cal. Feb. 28, 2019) ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (quoting *Morris*, 236 F.3d at 1068)). In such situations, defendants generally introduce evidence that establishes that a plaintiff cannot maintain a cause of action against the so-called sham defendant. If the plaintiff does not "offer[] any evidence that substantively rebuts Defendants' evidence," courts may conclude that defendants "have sufficiently established fraudulent joinder." *Barajas v. Carriage Cemetery Servs. of California, Inc.*, 2019 WL 2499711, at *4 (N.D. Cal. June 17, 2019); *Harwood v. Option Care Enterprises, Inc.*, 2019 WL 1952692, at *8 (C.D. Cal. May 2, 2019) (holding defendant was fraudulently joined because "Defendants offered facts to demonstrate why [the defendant] could not be liable on any theory, and Plaintiff did not dispute or refute those facts. Therefore, the Court

determines that Defendants established that there is *no possibility* that Plaintiff can state a claim against [the fraudulently joined defendant].").

In the instant case, Plaintiff moves to remand on the basis that Tesla is a proper defendant with respect to Plaintiff's causes of action under FEHA. Mot. at 3-6. Specifically, the Court considers whether Defendants adequately establish that Plaintiff was not Tesla's employee, and therefore, that Tesla cannot be held liable under Plaintiff's FEHA causes of action. As explained more fully below, the Court concludes that Tesla was fraudulently joined in the instant action.

"FEHA's purpose is to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination." *Jimenez v. U.S. Cont'l Mktg., Inc.*, 41 Cal. App. 5th 189, 196 (2019). "To this end, FEHA makes it unlawful for an employer to harass or retaliate against an employee." *Id.* "To be entitled to relief for allegations of harassment and retaliation, a FEHA claimant must first demonstrate an employment relationship with his or her alleged employer." *Id.*

"In determining whether a defendant is an employer, courts consider the 'totality of circumstances' that 'reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of work duties.'" *Nepomuceno v. Cherokee Med. Servs., LLC*, 2013 WL 5670960, at *4 (S.D. Cal. Oct. 16, 2013) (quoting *Vernon v. State,* 116 Cal.App.4th 114, 124 (2004)). As the California Supreme Court has noted, "[t]his standard requires 'a comprehensive and immediate level of 'day-to-day' authority' over matters such as hiring, firing, direction, supervision, and discipline of the employee." *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014) (quoting *Vernon,* 116 Cal. App. 4th at 127-28).

Plaintiff notes that under California law and "[i]n the context of an individual who is employed by a temporary agency and assigned to work on the premises of the agency's client, . . . the purpose of FEHA to safeguard an employee's right to hold employment without experiencing discrimination is best served by applying the traditional labor law doctrine of 'dual employers,' holding both the agency and the client are employers." *Mathieu v. Norrell Corp.*, 115

8

Cal. App. 4th 1174, 1183 (2004); Mot. at 5. In other words, "a worker employed by one entity [can] also [be] considered an employee of a second entity if that borrowing entity exercises certain powers of control over the employee." *Hirst v. City of Oceanside*, 236 Cal. App. 4th 774, 783 (2015).

In these situations involving temporary-staffing, "factors under the contractual control of the temporary-staffing agency (such as hiring, payment, benefits, and timesheets being handled by a temporary-staffing agency) are not given any weight in determining the employment relationship with respect to the contracting employer." *Jimenez*, 41 Cal. App. 5th at 193. Rather, courts must look at employer relationships practically and under the totality of the circumstances. In this regard, plaintiffs must still allege that a purported employer exercised "'a comprehensive and immediate level of 'day-to-day' authority'" over the employee. *Patterson*, 60 Cal. 4th at 499 (quoting *Vernon,* 116 Cal. App. 4th at 127-28); *Bradley v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612, 1626 (2008) ("[T]he employment relationship for FEHA purposes must be tied directly to the amount of control exercised over the employee."). Nonetheless, "[t]he key is that liability is predicated on the allegations of harassment or discrimination involving the terms, conditions, or privileges of employment *under the control of the employer*, and that the employment relationship exists for FEHA purposes within the context of the control retained." *Bradley*, 158 Cal. App. 4th at 1629. Put more simply, "the main factor is the second entity's right to control job performance." *Hirst*, 236 Cal. App. 4th at 783.

Here, Plaintiff claims that the aforementioned case law requires remand. In his Complaint, Plaintiff states: "At all relevant times, he was an employee of RANDSTAD." Compl. ¶ 1. However, Plaintiff asserts that although he was an employee of Randstad, a temporary staffing agency, Plaintiff was assigned to work on the premises of Tesla, Randstad's client, and that Plaintiff's work "directly or indirectly" benefitted Tesla. Compl. ¶¶ 2, 6, 7. Specifically, the Complaint alleges "a work environment controlled by Tesla and requiring him to work at Tesla locations alongside Tesla employees." Mot. at 2, 5 (citing Compl. ¶¶ 30, 31, 38, 41, 49). Plaintiff also claims that he was "exposed to [racially motivated harassment] from the employees of [Tesla]

9

who worked in the quality inspection area of the facility." Compl. ¶ 40. However, in the instant case, Defendants submitted sworn declarations that rebut Plaintiff's allegations.

First, Defendants filed a declaration from Doug Evans, CEVA's Director of Logistics, who served as the General Manager of the San Jose Facility where Plaintiff worked during the time at issue in the instant case. ECF No. 22 ¶ 2 ("Evans Decl."). Evans was "responsible for overseeing all day to day operations of the San Jose Facility on CEVA's behalf, including, but not limited to employee staffing at the San Jose Facility, the work performed at the San Jose Facility, the physical layout of the San Jose Facility[,] and the companies whose employees had access to and worked in the San Jose Facility." *Id*. ¶ 3. At the time Plaintiff worked at the San Jose Facility, "CEVA exclusively leased the San Jose Facility as a space for its work, and CEVA controlled the San Jose Facility from late 2017 to early 2019 as a result of leasing this property." *Id*. ¶ 4. "CEVA, rather than Tesla, selected Randstad to provide leased employees for this work," and "Tesla did not lease any Randstad employee to perform work at the San Jose Facility." *Id*. ¶ 5.

Furthermore, "Randstad employees [such as Plaintiff] working at the San Jose Facility performed work under the sole direction of Randstad and CEVA employees," and "Tesla employees did not manage or supervise Randstad employees' work." *Id.* ¶ 6. "CEVA employees exclusively trained all Randstad employees working at the San Jose [F]acility regarding the performance of the work tasks that they performed," and "CEVA managers and supervisors and Randstad managers and supervisors also worked together to set work schedules and job duties for Randstad employees working at the San Jose Facility." *Id*.

Tesla employees held none of these responsibilities. *Id*. ("Tesla employees did not participate [in] setting work schedules or job duties for Randstad employees or train Randstad employees regarding the performance of their job duties at the San Jose Facility."). Evans states that to his knowledge, Tesla did not have the authority to direct or control the work of Randstad employees nor did it ever in practice direct or control the work of Randstad employees. *Id*. ¶ 8. In fact, Tesla's only presence at the San Jose Facility was "an approximately 200 square foot office in one corner of the approximately 300,000 square foot San Jose Facility," and "[o]nly

10

approximately four Tesla employees worked in this office," which was separate from the "work floor" where Plaintiff worked. *Id*. ¶ 9.

Second, Defendants submitted the sworn declaration of Charles Grayson, Tesla's Manager of Production, Warehousing, who worked at the San Jose Facility at the time Plaintiff worked there. ECF No. 23 ¶¶ 2-3 ("Grayson Decl."). Grayson confirms Evans's statement that "no Tesla employee supervised, controlled, or directed the day to day work performed by employees of CEVA or Randstad at the San Jose Facility." *Id*. ¶ 4. Tesla employees did not make decisions to terminate, promote, or hire CEVA or Randstad employees working at the San Jose Facility. *Id*. ¶ 5. Finally, with respect to Plaintiff's allegation that he was racially harassed by Tesla employees working in the quality inspection area of the facility, Compl. ¶ 40, Grayson notes that "Tesla only maintained a very small office in one corner of the very large San Jose Facility." Grayson Decl. ¶ 6. Though "the San Jose Facility did contain a quality control/quality inspection area, . . . . the individuals that performed the day to day work in this area were employees of Thyssenkrupp Industrial & Supply Chain Services, informally known as 'TK Logistics,' a separate staffing company, not Tesla." *Id*. ¶ 7. Evans's Declaration also explains that "the individuals that actually performed work in this area [*i.e.*, the quality control/quality inspection area] were employees [of] a third party company known as TK Logistics." Evans Decl. ¶ 10.

Third, Defendants submitted a sworn declaration from Christine Woo, who serves as Senior Vice President for Randstad. ECF No. 26 ¶ 2 ("Woo Decl."). Woo explains that CEVA is a customer of Randstad, and the two organizations "have entered into services agreements, in the past and at present, which call for Randstad to provide CEVA with temporary workers. . . . Plaintiff was such an employee of Randstad, assigned to work at CEVA's facility in San Jose, California." *Id.* ¶ 5. Crucially, the same is not true of Tesla. Woo notes that Tesla "is not a customer of Randstad," and that Randstad has never in the past had, and does not currently have, a services agreement with Tesla." *Id*. ¶ 6.

Given these sworn declarations, Plaintiff may hold CEVA liable as an employer. This evidence, however, does not allow Plaintiff to hold Tesla liable as an employer because Tesla was

11

Case No. 19-CV-07657-LHK
ORDER DENYING MOTION TO REMAND

never Randstad's client, Tesla did not own or manage the facilities where Plaintiff worked, and Tesla did not in practice exercise "a comprehensive and immediate level of day-to-day authority" over Plaintiff. *See Patterson*, 60 Cal. 4th at 499 (quotation marks omitted); Woo Decl. ¶ 6; Evans Decl. ¶¶ 4-9; Grayson Decl. ¶¶ 4-7. Indeed, Defendants even rebut Plaintiff's allegation that he was "exposed to [racially motivated harassment] from the employees of [Tesla] who worked in the quality inspection area of the facility," as multiple declarations explain that those employees were not Tesla's employees. *See* Compl. ¶ 40; Grayson Decl. ¶ 7; Evans Decl. ¶ 10.

Therefore, as it stands, the evidence establishes that Tesla did not exercise "'a comprehensive and immediate level of 'day-to-day' authority'" over Plaintiff. *See Patterson*, 60 Cal. 4th at 499 (quoting *Vernon,* 116 Cal. App. 4th at 127-28); *Hirst*, 23 Cal. App. 4th at 783 ("[A] worker employed by one entity [can] also [be] considered an employee of a second entity if that borrowing entity exercises certain powers of control over the employee.").

Importantly, Plaintiff did not file any evidence to rebut or contest Defendants' declarations that Plaintiff was never employed by Tesla. Plaintiff therefore resorts to the argument that Tesla can be held liable because Plaintiff's work "directly or indirectly" benefitted Tesla.[2] Compl. ¶¶ 6, 7; Reply at 4-5. As discussed previously, however, that is not the proper test for determining whether Plaintiff can be considered Tesla's employee under FEHA. Rather, the proper inquiry is whether Tesla exercised "a comprehensive and immediate level of day-to-day authority" over Plaintiff. *Patterson*, 60 Cal. 4th at 499 (quotation marks omitted).

Indeed, the Ninth Circuit, relying on California law, rejected a similar argument in a published opinion. In *Doe I v. Wal-Mart Stores, Inc.*, the plaintiffs were employed by separate suppliers but alleged that they were Wal-Mart's employees because their work for their employers benefitted Wal-Mart. 572 F.3d 677, 683 (9th Cir. 2009). According to the plaintiffs, Wal-Mart could be held liable under FEHA because "Wal-Mart contracted with suppliers regarding

---

[2] Elsewhere, Plaintiff conclusorily states that Tesla "exercised a level of control of the workplace" without anything more. Reply at 4-5. Such a "general statement that [Tesla] exercised control over [Plaintiff's] day-to-day employment is a conclusion, not a factual allegation stated with any specificity." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).

12
Case No. 19-CV-07657-LHK
ORDER DENYING MOTION TO REMAND

deadlines, quality of products, materials used, prices, and other common buyer-seller contract terms." *Id*. The Ninth Circuit, however, held that "[s]uch supply contract terms do not constitute an 'immediate level of day-to-day' control over a supplier's employees so as to create an employment relationship between a purchaser and a supplier's employees." *Id*. (quotation marks omitted). That same conclusion follows here.

As a result, what the Court is left with are Defendants' unrebutted sworn declarations. Plaintiff has not proffered any evidence of their own or contested Defendants' declarations. In situations where the evidence conclusively establishes that a plaintiff cannot maintain a cause of action against a defendant, courts may "pierc[e] the pleadings" and find that a defendant was fraudulently joined. *See Morris*, 236 F.3d at 1068 (affirming district court's conclusion that defendant was fraudulently joined); *OpenGov, Inc.*, 2019 WL 978769, at *6 ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (quoting *Morris*, 236 F.3d at 1068)); *Barajas*, 2019 WL 2499711, at *4 (holding Defendants "sufficiently established fraudulent joinder" because "Plaintiffs have not offered any evidence that substantively rebuts Defendants' evidence"); *Harwood*, 2019 WL 1952692, at *8 (holding defendant was fraudulently joined because "Defendants offered facts to demonstrate why [the defendant] could not be liable on any theory, and Plaintiff did not dispute or refute those facts. Therefore, the Court determines that Defendants established that there is *no possibility* that Plaintiff can state a claim against [the fraudulently joined defendant]."). That is precisely the situation here.

Plaintiff moves to remand on the basis that Tesla is a proper defendant with respect to only Plaintiff's causes of action under FEHA. Mot. at 3-6. As discussed above, Defendants have sufficiently established Plaintiff's fraudulent joinder of Tesla as to Plaintiff's FEHA causes of action such that the Court disregards Tesla's California citizenship. Accordingly, the parties in the instant case are completely diverse. Therefore, the Court must next address whether Plaintiff's suit satisfies the $75,000 amount in controversy requirement in order to determine whether the Court has subject matter jurisdiction over the instant action.

13

### B. Plaintiff's Suit Satisfies the $75,000 Amount in Controversy Requirement for Diversity Jurisdiction

Where, as here, it is not facially evident from the Complaint that the $75,000 amount in controversy was satisfied at the time of removal, a defendant must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). When filing a notice of removal, however, a defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, (2014) (citing 18 U.S.C. § 1446(a)). Rather, "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*.

Here, Defendants assert that Plaintiff could seek approximately $38,700 in lost wages. Notice of Removal ¶ 47; Opp. at 11. Plaintiff does not dispute this $38,700 figure. Mot. at 8. Therefore, in order to satisfy the $75,000 amount in controversy necessary to assert diversity jurisdiction, Defendants must establish that Plaintiff's other requests for recovery—for punitive damages, emotional distress damages, and attorney's fees—are greater than the remaining $36,300 necessary to meet the $75,000 threshold.

First, Defendants argue that punitive damages and emotional distress damages are enough to satisfy the amount in controversy. Second, Defendants contend that Plaintiff's attorney's fees are also sufficient to satisfy the $75,000 amount in controversy requirement. Because the Court agrees with Defendants as to their first argument, the Court does not reach Defendants' second argument.

"To establish probable punitive damages, [a defendant] may introduce evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002). Though a defendant's cited cases may "involve distinguishable facts[, that alone] is not dispositive" because analogous jury verdicts can nonetheless "amply demonstrate the potential for large punitive damage awards." *Id*. The same is true for emotional distress damages. *See Rodriguez v. Home Depot, U.S.A., Inc.*, 2016 WL 3902838, at *5 (N.D. Cal. July 19, 2016)

14

1    ("A defendant may introduce evidence of jury verdicts in cases involving analogous facts to

2    establish probable emotional distress damages. The facts of such case need not be perfectly

3    analogous, however, to meet the 'more-likely-than-not standard.'" (quotation marks and citations

4    omitted)); *see also Lopez v. Healthcare Servs. Grp., Inc.*, 2019 WL 1646083, at *3 (C.D. Cal. Apr.

5    2, 2019) (holding that a defendant may introduce evidence of jury verdicts from cases with

6    analogous facts to establish probable emotional distress damages and probable punitive damages).

7    Here, Plaintiff seeks punitive damages and emotional distress damages based on

8    allegations that he was discriminated against, harassed, and subjected to a "racially hostile work

9    environment" "due to his membership in the protected classes of a Black, African American

10   male." Compl. ¶¶ 54-56, 62-64. Defendants proffer jury verdicts from various successful hostile

11   work environment lawsuits filed by African American plaintiffs in California. ECF No. 27

12   ("RJN"). These jury verdicts include punitive damages and emotional distress damages far in

13   excess of the $75,000 necessary to establish diversity jurisdiction. *See id.*, Ex. 1 (awarding

14   $1,300,000 for emotional distress damages); Ex. 2 (awarding $100,000 for emotional distress

15   damages); Ex. 3 (awarding $1,200,000 for "non-economic loss" damages); Ex. 4 (awarding

16   $400,000 in punitive damages).

17   Plaintiff, in his Reply brief, offers no substantive response to the proffered jury verdicts.

18   *See* Reply at 2 ("As to the value of the case, this Court is not required to rely upon reports of

19   verdicts in other cases. Plaintiff asks this Court to find that defendants have failed to meet their

20   burden to show that the 'value' of this case exceeds $75,000.00.").

21   The Court therefore finds that Defendants have met their burden by demonstrating that

22   Plaintiff's request for punitive damages and emotional distress damages likely exceeds $75,000.

23   Though Defendants' jury verdicts are "not perfectly analogous," these cases "amply demonstrate

24   the potential for large punitive damage awards in employment discrimination cases" and

25   "indicate[] that emotional distress damages in a successful employment discrimination case may

26   be substantial." *Simmons*, 209 F. Supp. 3d at 1033-34.

27   As a result, Defendants have established that the parties in the instant action are completely

diverse and that the amount in controversy exceeds $75,000 such that diversity jurisdiction is proper. Because the Court has subject matter jurisdiction over the instant action, the Court DENIES Plaintiff's motion to remand.

**IV.  CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: April 24, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge